**UNSEALED PER ORDER**
11/9/12

UN-Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

OCT 2 2 2012

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. |
| | § | |
| TERRY ROSS BLAKE, | § | COUNT 1: 18 U.S.C. § 1962(d): Conspiracy |
| a/k/a "Big Terry," | § | to Participate in a Racketeering Enterprise; |
|  LARRY MAX BRYAN, | § | |
| a/k/a "Slick," | § | COUNT 2: 21 U.S.C. § 846: Conspiracy |
| JAMES LAWRENCE BURNS, | § | to Possess with Intent to Distribute |
| a/k/a "Chance," | § | Methamphetamine and Cocaine; |
| REBECCA JOHNSON CROPP, | § | |
| BEN CHRISTIAN DILLON, | § | COUNT 3: 18 U.S.C. § 1959 (a)(1): |
| a/k/a "Tuff," | § | Murder of Aaron Wade Otto; |
| RUSTY EUGENE DUKE, | § | |
| a/k/a "Duke" | § | COUNTS 4, 6 & 10:18 U.S.C.§ 924(j)(1) |
| KELLY RAY ELLEY, | § | Using and Carrying a Firearm to Commit |
| a/k/a "Magic," | § | Murder During and in Relation to a Crime |
| DESTINY NICOLE FEATHERS, | § | of Violence; |
| CHAD RAY FOLMSBEE, | § | |
| a/k/a "Polar Bear," | § | COUNT 5: 18 U.S.C. § 1959 (a)(1): |
| SAMANTHA DEANN GOLDMAN, | § |  Murder of Robert Alan Branch |
| KENNETH MICHAEL HANCOCK, | § | |
| a/k/a "Hancock," | § | COUNT 7: 18 U.S.C. § 1959 (a)(1): |
| DUSTIN LEE HARRIS, | § | Kidnapping of Mark Davis Byrd, Sr. |
| a/k/a "Lightning," | § | |
| BENJAMIN TROY JOHNSON, | § | COUNT 8: 18 U.S.C. § 1959 (a)(5): |
| a/k/a "South," | § | Conspiracy to Murder Mark Davis Byrd, Sr.; |
| CLAY JARRAD KIRKLAND, | § | |
| a/k/a "Diesel," | § | COUNT 9: 18 U.S.C. § 1959 (a)(1): |
| MICHAEL RICHARD LAMPHERE, | § | Murder of Mark Davis Byrd, Sr.; |
| a/k/a "Lamp," | § | |
| JAMIE GRANT LOVEALL, | § | COUNT 11: 18 U.S.C. § 1959 (a)(1) & 3: |
| a/k/a "Dutch," | § | Accessory After the Fact in the Murder of |
| WILLIAM DAVID MAYNARD, | § | Mark Davis Byrd, Sr.; |
| a/k/a "Baby Huey," | § | |
| SHANE GAIL MCNIEL, | § | COUNT 12: 18 U.S.C. § 1959 (a)(1): |
| a/k/a "Dirty," | § | Kidnapping of Albert Duane Parker; |
| JAMES MARSHALL MELDRUM, | § | |
| a/k/a "Dirty," | § | COUNT 13: 18 U.S.C. § 1959 (a)(3): |
| GLEN RAY MILLICAN JR, | § | Assault of Albert Duane Parker; |
| a/k/a "Fly," | § | |

CHRISTOPHER JAMES MORRIS,                  §     COUNT 14: 18 U.S.C.§ 1959(a)(3):
a/k/a "Rockstar,"                          §     Assault of Tommy Dale Slaughter;
STEPHEN TOBIN MULLEN,                       §
a/k/a "Scuba Steve,"                       §     COUNT 15:18 U.S.C. § 1959 (a)(1):
JUSTIN CHRISTOPHER NORTHRUP,               §     Kidnapping of Joseph Wright;
a/k/a "Ruthless,"                          §
RONALD LEE PRINCE,                         §     COUNT 16:18 U.S.C. § 1959 (a)(1):
a/k/a "Big Show,"                          §     Kidnapping of Ray Deason;
CHARLES LEE ROBERTS,                       §
a/k/a "Jive,"                              §     COUNT 17:18 U.S.C. § 1959(a)(5):
DAVID ORLANDO ROBERTS,                     §     Attempted Murder of Jason Head: and
a/k/a "Chopper,"                           §
BILLY DON SEAY,                            §     18 U.S.C. § 2: Aiding and Abetting.
a/k/a "Big Nasty,"                         §
JAMES ERIK SHARRON,                        §
a/k/a "Flounder,"                          §
SAMMY KEITH SHIPMAN,                       §
a/k/a "Stubby,"                            §
BRIAN LEE THOMAS,                          §
a/k/a "Bam Bam,"                           §
FREDRICK MICHAL VILLARREAL,                §
a/k/a "Big Mike,"                          §
TAMMY MELISSA WALL,                        §
BILLY FRANK WEATHERRED,                    §
a/k/a "Billy The Kid," and                 §
STEVEN WORTHEY,                            §
a/k/a "Worthey,"                           §
                                           §
          Defendants,                      §
                                           §
                                           §
                                           §
                                           §
                                           §

### SEALED

### SUPERSEDING INDICTMENT

### COUNT ONE

### (Conspiracy to Participate in Racketeering Activity)

THE UNITED STATES GRAND JURY CHARGES:

2

## Introduction

1.      At various times relevant to this Superseding Indictment, the defendants and others

known and unknown, were members of the Aryan Brotherhood of Texas (hereinafter the "ABT"),

a criminal organization whose members and associates engaged in narcotics distribution, gambling,

and acts of violence involving murder, assault, and arson, and which operated throughout Oklahoma

and Texas, including the Southern District of Texas, and elsewhere.

## Structure and Operation of the Enterprise

2.      The structure of the ABT included, but was not limited to, the following:

a.      The ABT was a violent "whites only" prison-based gang with thousands of

members operating inside and outside of state and federal penal institutions throughout Texas and

the United States.

b.      The traditional power centers of the ABT, and members of the gang's

leadership structure, were predominately located in prisons operated by the Texas Department of

Criminal Justice (hereinafter the "TDCJ") and metropolitan areas throughout Texas. The ABT was

established in the early 1980's within TDCJ. The ABT modeled itself after and adopted many of the

precepts and writings of the Aryan Brotherhood, a California-based prison gang that was formed in

the California prison system during the 1960's. The ABT offered protection to "white" inmates if

they joined the gang.

c.      The ABT had a detailed and uniform organizational structure, which is

outlined - along with various rules, procedures, and code of conduct - in a written "Constitution"

widely distributed to members throughout Texas and elsewhere.

d.      In Texas, there were two competing ABT factions.  Each faction followed

3

the leadership of their respective faction.  Each faction had similar chain of command structures and had a defined militaristic rank structure.  ABT members referred to the gang as the "Family."  The hierarchy of each faction was divided into separate TDCJ regions.   Each region included a "General," two "Majors," several "Captains," "Lieutenants," "Sergeants-at-Arms," and numerous "Soldiers." The General was the highest authority within the Region.  Subordinate ranking members served to support the General, and enforce gang members' discipline and adherence to established ABT rules and by-laws.  The ABT's ranking structure remained constant; however, personnel changes (promotions, demotions, terminations) occurred frequently.

e.      The five ABT Generals comprised a steering committee that was referred to as the "Wheel," which controlled all criminal aspects of the gang.  Each Wheel member was responsible for appointing his subordinate, ranking members (Majors) within his respective region. This included appointment of an inside Major (in-custody member) and an outside Major (referring to a member in the "free world").   These Majors, in turn, were responsible for appointing their subordinate Captains and Lieutenants, who, in turn, appointed their Sergeants.  Wheel members typically remained in place regardless of their custody status, unlike other ranking members, who typically lost rank when their custody status changed.

f.      ABT leaders had the authority within the gang to issue "D.O.'s" (direct orders) and mete out punishment.  A "D.O." was an assignment given to a subordinate ABT member that would serve a purpose for the ABT.  The "D.O." could range from a leader ordering a "S.O.S" (smash on sight), meaning the assault of a rival gang member or of an ABT member who had committed a violation of the ABT rules, to a "green light," or "X," meaning the murder of a rival gang member or of an ABT member who had committed an egregious violation of the gang's rules.

4

Failure to perform a "D.O." resulted in the assigned member being in violation of the rules. Punishment for failing to complete the "D.O." could range anywhere from a beating to death.

g.      Members of the ABT greeted each other, and showed their membership in the gang, using a hand-sign intended to represent the letters "A" and "B." The ABT employed a robust symbolgy as well, using depictions of Nazi-era inspired symbols and artwork to demonstrate their affiliation. Members often had tattoos incorporating one or more Nazi-era symbols including but not limited to the Nazi flag, Swastika, Iron Eagle and Schutzstaffel ("SS") lighting bolts. The most coveted tattoo of ABT membership was the ABT patch, which could be worn only by fully made members who generally ascended to full membership by committing a "blood-tie" (aggravated assault or murder) on behalf of the gang. The design and shape of the patch would vary, but usually consisted of a shield encompassing a sword, swastika, and crown - with the letters "A" and "B" and lightning bolts of the Nazi "SS" over the top of the shield - and "Texas" under the bottom of the shield. Phrases unique to the ABT lexicon included "GFBD," "14-88," "12," "23," "23/16," "28," and "100%." The gang also incorporated these phrases into tattoos, which they used to show their membership in the gang. The colors associated with the ABT were black and red, and members of the ABT often demonstrated their affiliation with the ABT by wearing clothing containing the colors black and red or incorporating some of the gang's other symbols or phrases.

h.      Once released from incarceration, ABT members were required to remain loyal to the ABT and were required to immediately report to outside leaders to further the goals of the ABT through criminal activity. One of the goals of the ABT was to recruit new members. ABT members were recruited from both inside and outside state and federal penal institutions. In order to be considered for ABT membership, a person had to be sponsored by another ABT member.

5

Once sponsored, a prospective member had to serve an unspecified term of usually not less than one year, during which he was referred to as a prospect, and his conduct was observed by other gang members. During this period, the prospect was required to study and learn the ABT Constitution and the "Prospect Schooling Guide." The prospect was also required to sign a "Blind Faith Commitment," whereby he pledged an unconditional commitment to follow all orders issued by ABT superiors. While a prospect, the individual was considered part of the ABT family and entitled to the full protection of the gang. The prospect was also subjected to the rules and orders of the gang. If the prospect's conduct during the probationary period was deemed satisfactory, he was admitted by a majority vote of all ABT members present. All ABT members were required to attend monthly "church" meetings where criminal activity was discussed, financial proceeds from criminal activity were collected including, but not limited to, collection of drug proceeds from subordinate gang members for senior ABT gang leaders, and beatings of fellow ABT gang members were administered.

    i.  In addition to members, the enterprise included those closely affiliated with the ABT, who were called "associates." While females were not allowed to become members of the ABT, those who associated with the ABT and engaged in criminal activity for the benefit of the ABT were often referred to as "featherwoods." Associates who did not fulfill their obligations to the ABT were sometimes subject to violence, including murder. Female associates functioned as communication hubs, facilitating gang communication among imprisoned members throughout the penal system through the use of the telephone, Internet and United States mail.

### The Racketeering Enterprise

    3.  The ABT, including its leaders, members, and associates, constituted an "enterprise,"

6

as defined in Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members and associates, including its prospects, functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

### The Defendants

4. At various times relevant to this Superseding Indictment, the following individuals, among others, were members or associates of the ABT in the various capacities set forth below:

a. **TERRY ROSS BLAKE, a/k/a "Big Terry," LARRY MAX BRYAN, a/k/a "Slick," WILLIAM DAVID MAYNARD, a/k/a "Baby Huey," and CHARLES LEE ROBERTS, a/k/a "Jive,"** each held a leadership rank of "General" or "Acting General" of the ABT enterprise, and directed other members and associates of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs. As leaders, **TERRY ROSS BLAKE, a/k/a "Big Terry," LARRY MAX BRYAN, a/k/a "Slick," WILLIAM DAVID MAYNARD, a/k/a "Baby Huey," and CHARLES LEE ROBERTS, a/k/a "Jive,"** were responsible for, among other things, supervising the criminal activities of the members and associates of the ABT enterprise; issuing orders to kill rival gang members and subordinate gang members whom they believed had violated ABT rules of conduct; and presiding over ABT "church" meetings where criminal activity was discussed, proceeds from criminal activity were collected including, but not limited to, collection of drug proceeds from subordinate gang members, and beatings of fellow ABT gang members were administered. In addition, apart from supervising and directing the criminal activities of the members and associates of the ABT enterprise, **TERRY ROSS BLAKE, a/k/a "Big**

7

Terry," **LARRY MAX BRYAN, a/k/a "Slick," WILLIAM DAVID MAYNARD, a/k/a "Baby Huey," and CHARLES LEE ROBERTS, a/k/a "Jive,"** also participated directly in the criminal activities of the ABT enterprise. Among their criminal activities were murder, attempted murder, kidnapping, assault, narcotics distribution, weapons trafficking, arson, and counterfeiting.

      b.     **JAMES LAWRENCE BURNS, a/k/a "Chance," BEN CHRISTIAN DILLON, a/k/a "Tuff," RUSTY EUGENE DUKE, a/k/a "Duke," KELLY RAY ELLEY, a/k/a "Magic," CHAD RAY FOLMSBEE, a/k/a "Polar Bear," KENNETH MICHAEL HANCOCK, a/k/a "Hancock," BENJAMIN TROY JOHNSON, a/k/a "South," MICHAEL RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a "Dutch," GLEN RAY MILLICAN, JR., a/k/a "Fly," JAMES ERIK SHARRON, a/k/a "Flounder," FREDRICK MICHAL VILLARREAL, a/k/a "Big Mike," and STEVEN WORTHEY, a/k/a "Worthey,"** each held a leadership rank of "Major," "Captain," "Lieutenant," and/or "Treasurer" of the ABT enterprise, and directed subordinate members and associates of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs. As high ranking ABT gang members, **JAMES LAWRENCE BURNS, a/k/a "Chance," BEN CHRISTIAN DILLON, a/k/a "Tuff," RUSTY EUGENE DUKE, a/k/a "Duke," KELLY RAY ELLEY, a/k/a "Magic," CHAD RAY FOLMSBEE, a/k/a "Polar Bear," KENNETH MICHAEL HANCOCK, a/k/a "Hancock," BENJAMIN TROY JOHNSON, a/k/a "South," MICHAEL RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a "Dutch," GLEN RAY MILLICAN, JR., a/k/a "Fly," JAMES ERIK SHARRON, a/k/a "Flounder," FREDRICK MICHAL VILLARREAL, a/k/a "Big Mike," and STEVEN WORTHEY, a/k/a "Worthey,"** were responsible for, among other things, supervising the criminal activities of subordinate members and associates of the ABT

enterprise; issuing orders to kill rival gang members and subordinate gang members whom they believed had violated ABT rules of conduct; and presiding over ABT "church" meetings where criminal activity was discussed, financial proceeds from criminal activity were collected including, but not limited to, collection of drug proceeds from subordinate gang members for senior ABT gang leaders, and beatings of fellow ABT gang members were administered. In addition, apart from supervising and directing the criminal activities of the members and associates of the ABT enterprise, **JAMES LAWRENCE BURNS, a/k/a "Chance," BEN CHRISTIAN DILLON, a/k/a "Tuff," RUSTY EUGENE DUKE, a/k/a "Duke," KELLY RAY ELLEY, a/k/a "Magic," CHAD RAY FOLMSBEE, a/k/a "Polar Bear," KENNETH MICHAEL HANCOCK, a/k/a "Hancock," BENJAMIN TROY JOHNSON, a/k/a "South," MICHAEL RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a "Dutch," GLEN RAY MILLICAN, JR., a/k/a "Fly," JAMES ERIK SHARRON, a/k/a "Flounder," FREDRICK MICHAL VILLARREAL, a/k/a "Big Mike," and STEVEN WORTHEY, a/k/a "Worthey,"** also participated directly in the criminal activities of the ABT enterprise. Among their criminal activities were murder, attempted murder, kidnapping, assault, narcotics distribution, weapons trafficking, arson, and counterfeiting.

     c.    **SHANE GAIL MCNIEL, a/k/a "Dirty," CHRISTOPHER JAMES MORRIS, a/k/a Rockstar," STEPHEN TOBY MULLEN JR., a/k/a "Scuba Steve," JUSTIN CHRISTOPHER NORTHRUP, a/k/a "Ruthless," DAVID ORLANDO ROBERTS, a/k/a "Chopper," and BILLY FRANK WEATHERRED, a/k/a "Billy the Kid,"** each held a rank of "Sergeant" and/or "Enforcer" in the ABT enterprise, and were responsible for, among other things, carrying out murders, attempted murders, assaults, and physical "disciplines" at the direction of senior ABT gang leaders. In addition, **SHANE GAIL MCNIEL, a/k/a "Dirty," CHRISTOPHER**

**JAMES MORRIS, a/k/a Rockstar," STEPHEN TOBY MULLEN JR., a/k/a "Scuba Steve,"**
**JUSTIN CHRISTOPHER NORTHRUP, a/k/a "Ruthless," DAVID ORLANDO ROBERTS,**
**a/k/a "Chopper,"** and **BILLY FRANK WEATHERRED, a/k/a "Billy the Kid,"** also participated
directly in other criminal activities of the ABT enterprise including, but not limited to, kidnapping,
narcotics distribution, weapons trafficking, arson, gambling and counterfeiting.

        d.    **REBECCA JOHNSON CROPP, DESTINY NICOLE FEATHERS,**
**SAMANTHA DEANN GOLDMAN, and TAMMY MELISSA WALL** each held a position of
ABT "Hub" and were often referred to as "Featherwoods." In such capacity they, among other things,
facilitated communication of criminal activities in furtherance of the conduct of the enterprise's
affairs among imprisoned ABT gang members throughout the federal and Texas state penal systems,
through the use of telephone, internet, and United States mail.  Such transmissions often included
messages ordering the commission of murders and assaults of ABT gang members and rival gang
members.

        e.    **DUSTIN LEE HARRIS, a/k/a "Lightning," CLAY JARRAD**
**KIRKLAND, a/k/a "Diesel," JAMES MARSHALL MELDRUM, a/k/a "Dirty," RONALD LEE**
**PRINCE, a/k/a "Big Show," BILLY DON SEAY, a/k/a "Big Nasty," SAMMY KEITH**
**SHIPMAN, a/k/a "Stubby," and BRIAN LEE THOMAS, a/k/a "Bam Bam,"** held the rank of
ABT "Soldier." In such capacity they, among other things, carried out criminal activities at the
direction of senior ABT leaders and for the benefit of the ABT enterprise.  Among their criminal
activities were murder, attempted murder, kidnapping, assault, narcotics distribution, weapons
trafficking, arson, and counterfeiting.

## Purpose of the Enterprise

5.      The purposes of the enterprise included, but were not limited to, the following:

a.      Enriching the leaders, members, and associates of the enterprise through, among other things, gambling and the illegal trafficking of controlled substances and firearms.

b.      Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence, and destruction, including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon, and other acts of violence.

c.      Promoting and enhancing the enterprise and its members' and associates' activities.

d.      Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and actual violence. The leaders, members, and associates of the enterprise undertook all steps necessary to prevent the detection of their criminal activities and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders, members, and associates, by the use of murder, violence, and intimidation directed against witnesses, victims, and others.

e.      Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

## Manner and Means of the Conspiracy

6.      The defendants agreed to facilitate a scheme that included the operation and management of the enterprise by a conspirator. Members and associates of the enterprise operated and conducted their affairs through a series of rules and policies, some of which were codified in a constitution and by-laws.

11

a.      The members and associates of the enterprise attended regular meetings, referred to as "church," where criminal activity was discussed, financial proceeds from criminal activity were collected including, but not limited to, collection of drug proceeds from subordinate gang members for senior ABT gang leaders, and beatings of fellow ABT gang members were administered.

b.      To enforce discipline and the rules of the enterprise, members and associates of the enterprise and their associates engaged in a system of "violations," in which the defendants and others attempted to murder, conspired to murder, physically assaulted, and threatened those members and associates of the enterprise who violated rules, questioned authority, or posed a threat to the leaders, members, or purposes of the enterprise.

c.      Members and associates of the enterprise employed and used gang-related terminology, symbols, gestures, and color schemes.

d.      To perpetuate the enterprise and to maintain and extend their power, members and associates of the enterprise committed and conspired to commit acts including murder, intimidation, and assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members, ABT gang members of a rival ABT faction, and witnesses to illegal activities of the enterprise.

e.      Members and associates of the enterprise managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related criminal activities, personnel, and operations and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons.

f.      Members and associates of the enterprise regularly financed their activities

12

through funds obtained in the illegal trafficking of controlled substances, including, but not limited to, the distribution and possession with the intent to distribute cocaine and methamphetamine.

g.      Members and associates of the enterprise committed acts of arson to exert control over illegal gambling markets.

h.      Members and associates of the enterprise hid, misrepresented, concealed and caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

## The Racketeering Conspiracy

7.      Beginning on a date unknown to the Grand Jury, but at least as of in or about 1993, and continuing through on or about the date of this Superseding Indictment, in the Southern District of Texas and elsewhere, the defendants, **TERRY ROSS BLAKE, a/k/a "Big Terry," LARRY MAX BRYAN, a/k/a "Slick," JAMES LAWRENCE BURNS, a/k/a "Chance," REBECCA JOHNSON CROPP, BEN CHRISTIAN DILLON, a/k/a "Tuff," RUSTY EUGENE DUKE, a/k/a "Duke," KELLY RAY ELLEY, a/k/a "Magic," DESTINY NICOLE FEATHERS, CHAD RAY FOLMSBEE, a/k/a "Polar Bear," SAMANTHA DEANN GOLDMAN, KENNETH MICHAEL HANCOCK, a/k/a "Hancock," DUSTIN LEE HARRIS, a/k/a "Lightning," BENJAMIN TROY JOHNSON, a/k/a "South," CLAY JARRAD KIRKLAND, a/k/a Diesel," MICHAEL RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a, "Dutch," WILLIAM DAVID MAYNARD, a/k/a "Baby Huey" SHANE GAIL MCNIEL, a/k/a, "Dirty," JAMES MARSHALL MELDRUM, a/k/a "Dirty," GLEN RAY MILLICAN JR., a/k/a "Fly," CHRISTOPHER JAMES MORRIS, a/k/a "Rockstar," STEPHEN TOBY MULLEN JR.,**

a/k/a "Scuba Steve," JUSTIN CHRISTOPHER NORTHRUP, a/k/a "Ruthless," RONALD LEE PRINCE, a/k/a "Big Show," CHARLES LEE ROBERTS, a/k/a "Jive," DAVID ORLANDO ROBERTS, a/k/a "Chopper," BILLY DON SEAY, a/k/a "Big Nasty," SAMMY KEITH SHIPMAN, a/k/a "Stubby," BRIAN LEE THOMAS, a/k/a "Bam Bam," FREDRICK MICHAL VILLARREAL, a/k/a " Big Mike," TAMMY MELISSA WALL, BILLY FRANK WEATHERRED, a/k/a "Billy the Kid," and STEVEN WORTHEY, a/k/a "Worthey," being persons employed by and associated with the ABT, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Sections 1961 (1) and (5) of Title 18, United States Code, consisting of multiple acts involving murder in violation of Texas Penal Code, Sections 19.02, multiple acts involving arson in violation of Texas Penal Code, Sections 28.02, multiple acts involving kidnaping in violation of Texas Penal Code, Sections 20.03, and 20.04, multiple acts of robbery in violation of Texas Penal Code, Sections 29.02, and multiple acts of narcotics trafficking in violation of 21 United States Code Section 841(a)(1) (distribution and possession with the intent to distribute a controlled substance) Section 843 (use of communication facility) and Section 846 (conspiracy to distribute and possession with the intent to distribute a controlled substance). It was part of this conspiracy that the defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

### Overt Acts

8.      In furtherance of the conspiracy and to achieve the objective thereof, the defendants

performed or caused to be performed the following overt acts, among others, in the Southern District of Texas, the Northern District of Texas, the Western District of Texas,  and elsewhere:

      a.    In or about 1993, **WILLIAM DAVID MAYNARD, a/k/a "Baby Huey,"** earned his "blood-tie" to the ABT by stabbing two individuals believed to be rival gang members.

      b.    In or about 2000, **WILLIAM DAVID MAYNARD, a/k/a "Baby Huey,"** and others known and unknown to the Grand Jury, issued a "green light" (order to kill) against individuals whom the ABT enterprise believed were members of the rival ABT faction.

      c.    Beginning on an exact date unknown to the Grand Jury, but at least as of in or about 2000, and continuing to the date of this Superseding Indictment, **TERRY ROSS BLAKE a/k/a Big Terry, LARRY MAX BRYAN, a/k/a "Slick," JAMES LAWRENCE BURNS, a/k/a "Chance,"  REBECCA JOHNSON CROPP, BEN CHRISTOPHER  DILLON, a/k/a "Tuff," RUSTY EUGENE DUKE, a/k/a "Duke," KELLY RAY ELLEY, a/k/a "Magic," DESTINY NICOLE FEATHERS, CHAD RAY FOLMSBEE, a/k/a "Polar Bear," KENNETH MICHAEL HANCOCK, a/k/a "Hancock," DUSTIN LEE HARRIS, a/k/a "Lightning," BENJAMIN TROY JOHNSON, a/k/a "South," CLAY JARRAD KIRKLAND, a/k/a "Diesel," MICHAEL RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a "Dutch," WILLIAM DAVID MAYNARD, a/k/a, "Baby Huey," JAMES MARSHALL MELDRUM, a/k/a "Dirty," GLEN RAY MILLICAN JR., a/k/a "Fly," CHRISTOPHER JAMES MORRIS, a/k/a "Rockstar," STEPHEN TOBY MULLEN JR., a/k/a "Scuba Steve," JUSTIN CHRISTOPHER NORTHRUP, a/k/a "Ruthless,"  RONALD LEE PRINCE, a/k/a "Big Show," CHARLES LEE ROBERTS, a/k/a "Jive," DAVID ORLANDO ROBERTS, a/k/a "Chopper," BILLY DON SEAY, a/k/a "Big Nasty," SAMMY KEITH SHIPMAN, a/k/a "Stubby," BRIAN LEE**

THOMAS, a/k/a "Bam Bam," FREDRICK MICHAL VILLARREAL, a/k/a "Big Mike,"
TAMMY MELISSA WALL, BILLY FRANK WEATHERRED, a/k/a "Billy the Kid," STEVEN
WORTHEY, a/k/a "Worthey," and others known and unknown to the Grand Jury, knowingly and
intentionally conspired to distribute and possessed with the intent to distribute 500 grams or more of
a mixture or substance containing a detectable amount of methamphetamine and/or 50 grams or more
of methamphetamine (actual),  in violation of Title 21, United States Code, Section 846 and 841.

        d.      In or about 2001, and continuing through in or about 2002, **MICHAEL
RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a "Dutch,"
WILLIAM DAVID MAYNARD, a/k/a "Baby Huey," DAVID ORLANDO ROBERTS, a/k/a
"Chopper,"** and others known and unknown to the Grand Jury, knowingly and intentionally
conspired to distribute and possessed with the intent to distribute five kilograms or more of a mixture
and substance containing a detectable amount of cocaine, and 280 grams or more of a mixture and
substance containing a detectable amount of cocaine base, in violation of Title 21 United States Code,
Sections 846 and 841(a) (1) and (b) (1) (A).

        e.      In or about  2001, **WILLIAM DAVID MAYNARD, a/k/a "Baby Huey,"
MICHAEL RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a
"Dutch,"** and others known and unknown to the Grand Jury, issued a "green light" to kill the ranking
member of the rival ABT faction.

        f.      From in our about 2001, and continuing through in or about March
2002, **WILLIAM DAVID MAYNARD, a/k/a "Baby Huey," JAMIE GRANT LOVEALL, a/k/a
"Dutch," JAMES ERIK SHARRON, a/k/a "Flounder,"** and others known and unknown to the
Grand Jury, ordered subordinate gang members to kill a fellow ABT gang member whom the ABT

believed had  failed to carry out a "DO" (direct order) to kill the senior leader of the rival ABT faction.

g.      In or about November 2001, **MICHAEL RICHARD LAMPHERE, a/k/a "Lamp,"** and others known and unknown to the Grand Jury, issued a "green light" to kill a subordinate ABT gang member whom the ABT believed had failed to follow the rules of the ABT enterprise.

h.      On or about November 25, 2001, **JAMIE GRANT LOVEALL, a/k/a "Dutch,"** and **DAVID ORLANDO ROBERTS, a/k/a "Chopper**," killed a subordinate ABT gang member whom the ABT believed had violated ABT gang rules.

i.      In or about November 2001, and continuing until in or about April 2002, **DAVID ORLANDO ROBERTS, a/k/a "Chopper**," earned an ABT "enforcer" patch for killing a fellow ABT gang member.

j.      On or about March 6, 2002, **SAMMY KEITH SHIPMAN, a/k/a "Stubby,"** earned his "bones" by killing a  fellow ABT gang member whom the ABT targeted for death for failing to carry out a direct order issued by ABT superiors.

k.      From in or about April 2008, and continuing through in or about May 2008, **LARRY MAX BRYAN,  a/k/a "Slick," STEVEN WORTHEY, a/k/a "Worthey," and TERRY ROSS BLAKE, a/k/a "Big Terry,"** and others known and unknown to the Grand Jury, approved the killing of an ABT prospect member.

l.      From in or about April 2008, and continuing through in or about May 2008, **KELLY RAY ELLEY, a/k/a "Magic,"** and others known and unknown to the Grand Jury, ordered a subordinate ABT gang member to kill a fellow ABT gang member whom the ABT believed was

17

cooperating with law enforcement.

m.      From in or about April 2008, and continuing through in or about May 2008, **KELLY RAY ELLEY, a/k/a "Magic,"** and others known and unknown to the Grand Jury, ordered subordinate ABT gang members to kill an ABT prospect and to make the killing "as messy as possible" as a message to the ABT enterprise not to cooperate with law enforcement.

n.      In or about April 2008, and continuing through in or about May 2008, **KELLY RAY ELLEY, a/k/a "Magic,"** and others known and unknown to the Grand Jury, ordered subordinate ABT gang members to kill an ABT prospect and to return the victim's severed finger as a trophy.

o.      In or about April 2008, and continuing through in or about May 2008, **KELLY RAY ELLEY, a/k/a "Magic,"** discussed with an ABT enforcer his plan to kill a police officer.

p.      In or about April 2008, and continuing through in or about May 2008, **DESTINY NICOLE FEATHERS** supplied a shotgun to an ABT enforcer for the killing of an ABT prospect.

q.      On or about May 4, 2008, **BRIAN LEE THOMAS, a/k/a "Bam Bam,"** and others known and unknown to the Grand Jury, kidnapped an ABT prospect at gunpoint.

r.      On or about May 4, 2008, **DESTINY NICOLE FEATHERS,** and others known and unknown to the Grand Jury, destroyed bloody clothing and other items used in connection with a murder.

s.      On or about May 4, 2008, **LARRY MAX BRYAN,  a/k/a "Slick,"** congratulated subordinate ABT gang members for successfully carrying out the killing of an ABT

prospect member.

t.      In or about April 2008, and continuing through in or about May 2008,

**SHANE GAIL MCNIEL, a/k/a, "Dirty,"** hosted several ABT "church" meetings where ABT

criminal activity was discussed, including narcotics trafficking, and where proceeds from illegal

activities were collected for the benefit of senior ABT gang members.

u.      On or about October 12, 2008, an unindicted co-conspirator known to the

Grand Jury, killed an individual whom the ABT enterprise believed to be a member of the rival ABT

faction.

v.      On or about April 18, 2009, **TERRY ROSS BLAKE, a/k/a "Big Terry,"**

and **LARRY MAX BRYAN, a/k/a "Slick"** discussed the profit potential of trafficking cocaine inside

the Texas penal system.

w.      On or about May 7, 2009, **BENJAMIN TROY JOHNSON, a/k/a "South,"**

and others known and unknown to the Grand Jury, stole gambling machines.

x.      In or about May 7, 2009, **BENJAMIN TROY JOHNSON, a/k/a "South,"**

and others known and unknown to the Grand Jury, set a trailer on fire to divert law enforcement

attention away from an ABT enterprise burglary.

y.      In or about December 2009, **TERRY ROSS BLAKE, a/k/a "Big Terry,"**

and others known and unknown to the Grand Jury, ordered subordinate ABT gang members to attack

a  fellow ABT gang member whom the ABT believed was claiming a rank superior to the one he

actually earned.

z.      In or about December 2009, **BEN CHRISTIAN DILLON, a/k/a "Tuff,"**

and others known and unknown to the Grand Jury, set a building that housed an environmental

business ablaze.

aa.     In or about 2010,  **JAMES LAWRENCE BURNS, a/k/a "Chance,"** and others known and unknown to the Grand Jury, ordered subordinate gang members to kill a fellow ABT gang member whom the ABT believed was cooperating with law enforcement.

bb.     In or about 2010, **RONALD LEE PRINCE, a/k/a "Big Show,"** assaulted numerous individuals on orders from senior ABT gang leaders.

cc.     In or about March 2010, **GLEN RAY MILLICAN JR., a/k/a "Fly,"** JUSTIN **CHRISTOPHER NORTHRUP, a/k/a, "Ruthless,"** and others known and unknown to the Grand Jury,  beat an individual for failing to pay a drug debt to the ABT enterprise.

dd.     In or about July 2010, **CHAD RAY FOLMSBEE, a/k/a, "Polar Bear,"** and others known and unknown to the Grand Jury, announced at an ABT enterprise "church" meeting that he would enforce the ABT "blood-in, blood-out" policy.

ee.     On or about July 28, 2010, **KENNETH MICHAEL HANCOCK, a/k/a "Hancock," BILLY DON SEAY, a/k/a "Big Nasty," BILLY FRANK WEATHERRED, a/k/a "Billy the Kid,"** and others known and unknown to the Grand Jury, burned an ABT-gang tattoo from the arm of a fellow gang member because he failed to carry out a direct order.

ff.      From in or about September 2010, and continuing through in or about January 2011, **SAMANTHA DEANN GOLDMAN, CHAD RAY FOLMSBEE, a/k/a "Polar Bear,"** and others known and unknown to the Grand Jury, sold stolen firearms and other merchandise.

gg.     In or about November 2010, **JAMES LAWRENCE BURNS, a/k/a "Chance," STEPHEN TOBY MULLEN JR., a/k/a "Scuba Steve," DUSTIN LEE HARRIS, a/k/a "Lightning," RONALD LEE PRINCE, a/k/a "Big Show,"** and others known and unknown to the

20

Grand Jury, beat and tortured a subordinate ABT gang member for pulling a gun on a fellow gang member.

hh.    In or about November 2010, **CHAD RAY FOLMSBEE, a/k/a, "Polar Bear,"** and others known and unknown to the Grand Jury, issued a "D.O." (direct order) to subordinate gang members to kill a fellow ABT gang member whom the ABT believed had stabbed a ranking ABT gang member.

ii.    In or about November 2010, **FREDRICK MICHAL VILLARREAL, a/k/a "Big Mike,"** and others known and unknown to the Grand Jury, transported a subordinate ABT gang member to and ABT "church" meeting where he was badly beaten for violating ABT rules.

jj.    In or about December 2010, **GLEN RAY MILLICAN JR., a/k/a "Fly,"** and others known and unknown to the Grand Jury, attempted to kill a fellow ABT gang member and female companion.

kk.    In or about December 2010, **JUSTIN CHRISTOPHER NORTHRUP, a/k/a, "Ruthless,"** and others known and unknown to the Grand Jury, severely beat an individual whom the ABT believed owed a drug debt to the ABT enterprise.

ll.    Beginning on a date unknown to the Grand Jury, but at least as of 2011, and continuing to the date of this Superseding Indictment, **REBECCA JOHNSON CROPP, SAMANTHA DEANN GOLDMAN, TAMMY MELISSA WALL**, and others known and unknown to the Grand Jury, facilitated communication of criminal activity regarding, among other things, murder and assaults, among ABT gang members, including those who were imprisoned.

mm.    In or about 2011, **JAMES LAWRENCE BURNS, a/k/a "Chance,"** and others known and unknown to the Grand Jury, ordered a subordinate gang member to kill a fellow

21

ABT gang member whom the ABT believed had disrespected the ABT enterprise.

        nn.    In or about January 2011, **JUSTIN CHRISTOPHER NORTHRUP, a/k/a,** **"Ruthless,"** and others known and unknown to the Grand Jury, traveled to Dallas, Texas to kill a fellow ABT gang member whom the ABT enterprise believed was cooperating with law enforcement.

        oo.    On or about May 2, 2011, **JAMES LAWRENCE BURNS, a/k/a "Chance,"** **STEPHEN TOBY MULLEN JR., a/k/a "Scuba Steve," CHRISTOPHER JAMES MORRIS,** **a/k/a "Rockstar," CLAY JARRAD KIRKLAND, a/k/a "Diesel,"** and others known and unknown to the Grand Jury, severely beat a fellow ABT gang member whom the ABT believed had stolen from the ABT enterprise.

        pp.    In or about June 2011, **JAMES MARSHALL MELDRUM, a/k/a "Dirty,"** **CLAY JARRAD KIRKLAND, a/k/a "Diesel,"** and others known and unknown to the Grand Jury, beat and forcibly stole cash and property from a female individual whom the ABT believed had disrespected the ABT enterprise.

        qq.    In our about July 2011, **RUSTY EUGENE DUKE, a/k/a "Duke,"** ordered a subordinate ABT gang member to kill an individual whom the ABT believed had stolen drugs from the ABT enterprise.

        rr.    In or about July 2011, **RUSTY EUGENE DUKE, a/k/a "Duke,"** supplied a weapon to an ABT subordinate gang member to kill an individual whom the ABT believed had stolen drugs from the ABT enterprise.

        ss.    On or about September 10, 2011, **SAMANTHA DEANN GOLDMAN** facilitated a three-way-call between **CHAD RAY FOLMSBEE, a/k/a "Polar Bear,"** and **CHARLES LEE ROBERTS, a/k/a "Jive,"** during which **FOLMSBEE** and **ROBERTS** discussed and approved

the assault against and elimination of ABT gang members.

        tt.     In or about October 2011, and continuing through on or about November 2011,

**REBECCA JOHNSON CROPP, TAMMY MELISSA WALL**, and others known and unknown to

the Grand Jury, communicated to imprisoned ABT gang members that a recently imprisoned ABT

gang member had cooperated with law enforcement.

## COUNT TWO

<u>Conspiracy to Possess with Intent to Distribute Methamphetamine and Cocaine</u>
[21 U.S.C. § 846]

9.      Beginning on an exact date unknown to the Grand Jury, but at least as of in or about

June 2001, and continuing through the date of this Superseding Indictment, in the Southern District of

Texas and elsewhere, the defendants **TERRY ROSS BLAKE, a/k/a "Big Terry," BEN**

**CHRISTIAN DILLON, a/k/a "Tuff," KELLY RAY ELLEY, a/k/a "Magic," CHAD RAY**

**FOLMSBEE, a/k/a "Polar Bear," BENJAMIN TROY JOHNSON, a/k/a, "South," MICHAEL**

**RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a "Dutch,"**

**WILLIAM DAVID MAYNARD, a/k/a "Baby Huey," GLEN RAY MILLICAN JR., a/k/a "Fly,"**

**JUSTIN CHRISTOPHER NORTHRUP, a/k/a "Ruthless," CHARLES LEE ROBERTS, a/k/a**

**"Jive," DAVID ORLANDO ROBERTS, a/k/a "Chopper," SAMMY KEITH SHIPMAN, a/k/a**

**"Stubby," FREDRICK MICHAL VILLARREAL, a/k/a "Big Mike,"** and others known and

unknown to the Grand Jury, would and did distribute and possess with the intent to distribute a

controlled substance, to wit, 500 grams or more of a mixture or substance containing a detectable

amount of methamphetamine and 50 grams or more of methamphetamine (actual), in violation of 21

U.S.C., §§ 841(a)(1) and 841 (b)(1)(A)(viii); and  five kilograms or more of a mixture and substance

containing a detectable amount of cocaine, and 280 grams or more of a mixture and substance

containing a detectable amount of cocaine base, in violation of 21 U.S.C., §§ 841(a)(1), (b)(1)(A) and

2.

In violation of 21 U.S.C.  § 846 and § 2.

## COUNT THREE

### Murder of Aaron Wade Otto
[ 18 U.S.C. §§ 1959 (a) (1) & (2)]

10.     At all times relevant to this Superseding Indictment, ABT, as more fully described in

Paragraphs One through Six of this Superseding Indictment, which are re-alleged and incorporated by

reference as though fully set forth herein, constituted an enterprise as defined in Title 18, United States

Code, Section 1959(b)(2), namely ABT,  that is, a group of individuals associated in fact, which was

engaged in and the activities of which affected, interstate and foreign commerce. The ABT constituted

an ongoing enterprise whose members functioned as a continuing unit for a common purpose of

achieving the objectives of the enterprise.

11.     At all times relevant to this Superseding Indictment, the above-described enterprise,

through its members and associates, engaged in racketeering activity as defined in Title 18, United

States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving narcotics trafficking in violation

of Title 21, United States Code, Sections 841, 843, and 846, acts involving arson in violation of Texas

Penal Code, Section 28.02, acts involving kidnaping in violation of Texas Penal Code, Sections 20.03,

20.04, acts involving robbery in violation of Texas Penal Code, Sections 29.02, and acts involving

murder in violation of Texas Penal Code, Section 19.02.

12.     On or about November 25, 2001, in the Southern District of Texas and elsewhere,

for the purpose of maintaining and increasing position within the ABT, an enterprise engaged in

racketeering activity, the defendants **MICHAEL RICHARD LAMPHERE, a/k/a, "Lamp," JAMIE**

**GRANT LOVEALL, a/k/a, "Dutch," DAVID ORLANDO ROBERTS, a/k/a "Chopper,"** and

others known and unknown to the Grand Jury, aiding each other, did intentionally and knowingly

murder Aaron Wade Otto, in violation of Texas Penal Code, Sections 19.02 (b) (1) and 7.01.

All in violation of 18 U.S.C. §§ 1959 (a) (1) and 2.

## COUNT FOUR

### Using and Carrying a Firearm to Commit Murder During and in Relation to a Crime of Violence; Aiding and Abetting
[18 U.S.C. §§ 924(j) (1) & 2]

13.     On or about November 25, 2001, in the Southern District of Texas and elsewhere, the

defendants **MICHAEL RICHARD LAMPHERE, a/k/a, "Lamp," JAMIE GRANT LOVEALL,**

**a/k/a, "Dutch," DAVID ORLANDO ROBERTS a/k/a "Chopper,"** and others known and unknown

to the Grand Jury, aiding each other, did knowingly use and carry a firearm during and in relation to a

crime of violence for which the defendants may be prosecuted in the United States, as alleged in Count

Eight of this Superseding Indictment, to wit: Violent Crimes in Aid of Racketeering, which is re-alleged

and incorporated by reference herein, in violation of Title 18, United States Code, Section 924 (c) (1),

and in the course of this violation caused the death of a person through the use of a firearm, which

killing is a murder as defined in Title 18, United States Code, Section 1111, in that the defendants did

knowingly kill Aaron Wade Otto, by shooting him with a firearm during the perpetration of a crime of

violence.

In violation of 18 U.S.C. §§ 924 (j) (1) and 2.

## COUNT FIVE

Murder of Robert Alan Branch
[ 18 U.S.C. §§ 1959 (a) (1) & (2)]

14.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

15.     On or about March 6, 2002, in the Southern District of Texas and elsewhere, for the purpose of maintaining and increasing position within the ABT, an enterprise engaged in racketeering activity, the defendants **JAMIE GRANT LOVEALL, a/k/a, "Dutch," WILLIAM DAVID MAYNARD, a/k/a, "Baby Huey," JAMES ERIK SHARRON, a/k/a, "Flounder," SAMMY KEITH SHIPMAN, a/k/a, "Stubby,"** and others known and unknown to the Grand Jury, aiding each other, did intentionally and knowingly murder Robert Alan Branch, a/k/a "Lightning," in violation of Texas Penal Code, Sections 19.02 (b) (1) and 7.01.

All in violation of 18 U.S.C. §§ 1959 (a) (1) and 2.

## COUNT SIX

Using and Carrying a Firearm to Commit Murder During
and in Relation to a Crime of Violence; Aiding and Abetting
[18 U.S.C. §§ 924(j) (1) & 2]

16.     On or about March 6, 2002, in the Southern District of Texas and elsewhere, the

defendants **JAMIE GRANT LOVEALL, a/k/a, "Dutch," WILLIAM DAVID MAYNARD, a/k/a,**

**"Baby Huey," JAMES ERIK SHARRON, a/k/a, "Flounder," SAMMY KEITH SHIPMAN, a/k/a,**

**"Stubby,"** and others known and unknown to the Grand Jury, aiding each other, did knowingly use

and carry a firearm during and in relation to a crime of violence for which the defendants may be

prosecuted in the United States, as alleged in Count Ten of this Superseding Indictment, to wit: Violent

Crimes in Aid of Racketeering, which is re-alleged and incorporated by reference herein, in violation

of Title 18, United States Code, Section 924 (c) (1), and in the course of this violation caused the death

of a person through the use of a firearm, which killing is a murder as defined in Title 18, United States

Code, Section 1111, in that the defendants did knowingly kill Robert Allen Branch, a/k/a "Lightning,"

by shooting him with a firearm during the perpetration of a crime of violence.

In violation of 18 U.S.C. §§ 924 (j) (1) and 2.

## COUNT SEVEN

<u>Kidnapping of Mark Davis Byrd, Sr.</u>
[18 U.S.C. §§ 1959 (a) (1) and (2)]

17.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

18.     On or about May 4, 2008, in the Western District of Texas and elsewhere, the defendant, **BRIAN LEE THOMAS, a/k/a "Bam Bam,"** and others known and unknown to the grand jury, aiding each other, for the purpose of maintaining and increasing position within the ABT, an enterprise engaged in racketeering activity, kidnapped Mark Davis Byrd, Sr., in violation of Texas Penal Code Sections 20.03 and 20.04.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## COUNT EIGHT

Conspiracy to Murder Mark Davis Byrd, Sr.
[ 18 U.S.C. § 1959(a) (5)]

19.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

20.     Starting on or about April 27, 2008, and continuing until on or about May 4, 2008, in the Western District of Texas, the Southern District of Texas, and elsewhere, for the purpose of maintaining and increasing position within the ABT, an enterprise engaged in racketeering activity, the defendants **LARRY MAX BRYAN, a/k/a "Slick," KELLY RAY ELLEY, a/k/a "Magic," BRIAN LEE THOMAS, a/k/a "Bam Bam," STEVEN WORTHEY, a/k/a, "Worthey,"** and others known and unknown to the Grand Jury, did intentionally and knowingly conspire to murder Mark Davis Byrd, Sr., in violation of Texas Penal Code, Sections 19.02 (b) (1) and 15.02.

In violation of 18 U.S.C. § 1959(a) (5).

## COUNT NINE

### Murder of Mark Davis Byrd, Sr.
[ 18 U.S.C. §§ 1959 (a) (1) & (2)]

21.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

22.     On or about May 4, 2008, in the Western District of Texas, the Southern District of Texas and elsewhere, for the purpose of maintaining and increasing position within the ABT, an enterprise engaged in racketeering activity, the defendants, **LARRY MAX BRYAN, a/k/a "Slick," KELLY RAY ELLEY, a/k/a "Magic," BRIAN LEE THOMAS, a/k/a "Bam Bam," STEVEN WORTHEY, a/k/a "Worthey,"** and others known and unknown to the Grand Jury, aiding each other, did intentionally and knowingly murder Mark Davis Byrd, Sr., in violation of Texas Penal Code, Sections 19.02 (b) (1) and 7.01.

All in violation of 18 U.S.C. §§ 1959 (a) (1) and 2.

## COUNT TEN

Using and Carrying a Firearm to Commit Murder During
and in Relation to a Crime of Violence; Aiding and Abetting
[18 U.S.C. §§ 924(j) (1) & 2]

23.     On or about May 4, 2008, in the Southern District of Texas and elsewhere, the

defendants **LARRY MAX BRYAN, a/k/a "Slick," KELLY RAY ELLEY, a/k/a "Magic,"**

**BRIAN LEE THOMAS, a/k/a "Bam Bam," STEVEN WORTHEY, a/k/a "Worthey,"** and

others known and unknown to the Grand Jury, aiding each other, did knowingly use and carry a

firearm during and in relation to a crime of violence for which the defendants may be prosecuted in

the United States, as alleged in Count Ten of this Superseding Indictment, to wit: Violent Crimes in

Aid of Racketeering, which is re-alleged and incorporated by reference herein, in violation of Title

18, United States Code, Section 924 (c) (1), and in the course of this violation caused the death of a

person through the use of a firearm, which killing is a murder as defined in Title 18, United States

Code, Section 1111, in that the defendants did knowingly kill Mark Davis Byrd, Sr. by shooting him

with a firearm during the perpetration of a crime of violence.

In violation of 18 U.S.C. §§ 924 (j) (1) and 2.

## COUNT ELEVEN

<u>Accessory After the Fact in the Murder of Mark Davis Byrd, Sr.</u>
[ 18 U.S.C. § 3 ]

24.     Paragraphs and Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

25.     On or about May 4, 2008, within the Western District of Texas and elsewhere, for the purpose of maintaining or increasing position within the ABT, an enterprise engaged in racketeering activity, defendants **LARRY MAX BRYAN, a/k/a "Slick," KELLY RAY ELLEY, a/k/a "Magic," BRIAN LEE THOMAS, a/k/a "Bam Bam," STEVEN WORTHEY, a/k/a, "Worthey,"** and others known and unknown to the Grand Jury, aiding each other, did intentionally and knowingly murder Mark Davis Byrd, Sr., in violation of Texas Penal Code, Sections19.02(b)(1), & (3) and 7.01, and in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

26.     After the commission of the above-described offense, defendants **DESTINY NICOLE FEATHERS, SHANE GAIL MCNIEL, a/k/a "Dirty,"** and others known and unknown to the Grand Jury, received, relieved, comforted, and assisted **LARRY MAX BRYAN, a/k/a "Slick," KELLY RAY ELLEY, a/k/a "Magic," BRIAN LEE THOMAS, a/k/a "Bam Bam," STEVEN WORTHEY, a/k/a, "Worthey,"** and others known and unknown to the Grand Jury, in order to hinder or prevent the apprehension, trial, or punishment of defendants **LARRY MAX BRYAN, a/k/a "Slick," KELLY RAY ELLEY, a/k/a "Magic,"BRIAN LEE THOMAS, a/k/a "Bam Bam," STEVEN WORTHEY, a/k/a, "Worthey,"** and others known and unknown to the Grand Jury.

In violation of 18 U.S.C. §3.

## COUNT TWELVE

Kidnapping of Albert Duane Parker
[ 18 U.S.C. §§ 1959 (a) (1) and (2)]

27.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and
incorporated by reference as though set forth fully herein.

28.     On or about May 14, 2010, in the Northern District of Texas and elsewhere, the
defendants **JAMES LAWRENCE BURNS, a/k/a "Chance," KENNETH MICHAEL**
**HANCOCK, a/k/a, "Hancock," BILLY DON SEAY, a/k/a "Big Nasty," BILLY FRANK**
**WEATHERRED, a/k/a "Billy the Kid,"** and others known and unknown to the Grand Jury, aiding
each other, for the purpose of maintaining and increasing position within the ABT, an enterprise
engaged in racketeering activity, kidnapped Albert Duane Parker, a/k/a "Sidetrack," in violation of
Texas Penal Code Sections  20.03 and 20.04.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

35

## COUNT THIRTEEN

<u>Assault of Albert Duane Parker</u>
[18 U.S.C. §§ 1959(a)(3) and 2]

29.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

30.     On or about May 14, 2010, in the Northern District of Texas and elsewhere, for the purpose of gaining entrance to and  maintaining and increasing position in the ABT, an enterprise engaged in racketeering activity, the defendants **JAMES LAWRENCE BURNS, a/k/a "Chance," KENNETH MICHAEL HANCOCK, a/k/a, "Hancock," BILLY DON SEAY, a/k/a "Big Nasty," BILLY FRANK WEATHERRED, a/k/a "Billy the Kid,"** and others known and unknown to the Grand Jury, aiding each other, did assault Albert Duane Parker a/k/a "Sidetrack," resulting in serious bodily injury, in violation of Texas Penal Code, Sections 22.02 and 7.01.

All in violation of 18 U.S.C. §§ 1959 (a)(3) and 2.

## COUNT FOURTEEN

### Assault of Tommy Dale Slaughter
[18 U.S.C. §§ 1959(a)(3) and 2]

31.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

32.     On or about July 28, 2010, in the Northern District of Texas, and elsewhere, for the purpose of gaining entrance to and  maintaining and increasing position in the ABT, an enterprise engaged in racketeering activity, the defendants **KENNETH MICHAEL HANCOCK, a/k/a "Hancock," BILLY DON SEAY, a/k/a "Big Nasty,"  BILLY FRANK WEATHERRED, a/k/a "Billy the Kid,"** and others known and unknown to the Grand Jury, aiding each other, did assault Tommy Dale Slaughter, resulting in serious bodily injury, in violation of Texas Penal Code, Sections 22.02 and 7.01.

All in violation of 18 U.S.C. §§ 1959 (a)(3) and 2.

## COUNT FIFTEEN

Kidnapping of Joseph Wright
[ 18 U.S.C. §§ 1959 (a) (1) and (2)]

33.    Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

34.    On or about November 4, 2010, in the Northern District of Texas and elsewhere, the defendants **JAMES LAWRENCE BURNS, a/k/a "Chance,"DUSTIN LEE HARRIS, a/k/a "Lightning,"  STEPHEN TOBY MULLEN JR., a/k/a "Scuba Steve,"  RONALD LEE PRINCE, a/k/a "Big Show,"** and others known and unknown to the grand jury, aiding each other, for the purpose of maintaining and increasing  position within the ABT, an enterprise engaged in racketeering activity, kidnapped Joseph Wright, a/k/a "Domino Joe," in violation of Texas Penal Code Sections  20.03 and 20.04.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## COUNT SIXTEEN

<u>Kidnapping of Ray Deason</u>
[ 18 U.S.C. §§ 1959 (a) (1) and (2)]

35.     Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

36.     On or about May 2, 2011, in the Northern District of Texas and elsewhere, the defendants **JAMES LAWRENCE BURNS, a/k/a "Chance," CHRISTOPHER JAMES MORRIS, a/k/a "Rockstar," STEPHEN TOBY MULLEN JR., a/k/a "Scuba Steve,"** and others known and unknown to the Grand Jury, aiding each other, for the purpose of maintaining and increasing position within the ABT, an enterprise engaged in racketeering activity, kidnapped Ray Deason, in violation of Texas Penal Code Sections  20.03 and 20.04.

In violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## COUNT SEVENTEEN

Attempted Murder of Jason Head
[ 18 U.S.C. §§ 1959(a)(5) and 2]

37.      Paragraphs Ten and Eleven of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

38.      On or about July 27, 2011, in the Northern District of Texas and elsewhere, the defendant, **RUSTY EUGENE DUKE, a/k/a "Duke,"** and others known and unknown to the Grand Jury, aiding each other, for the purpose of maintaining and increasing position within the ABT, an enterprise engaged  in racketeering activity, did attempt to murder Jason Head, in violation of Texas Penal Code, Sections 19.02 (b)(1), 15.01 and 7.01.

In violation of 18 U.S.C. §§ 1959(a)(5) and 2.

## NOTICE OF SPECIAL FINDINGS

[18 U.S.C. §§ 3591 and 3592]

39.     The Grand Jury incorporates by reference and re-alleges the allegations contained in Counts Three, Four and Five, and makes the following findings as to Counts Three, Four, and Five, the defendants **LARRY MAX BRYAN, a/k/a "Slick," KELLY RAY ELLEY, a/k/a/ Magic," BRIAN LEE THOMAS, a/k/a "Bam Bam" and STEVEN WORTHEY, a/k/a "Worthey,":**

      a.    were 18 years of age or older at the time of the offenses;

      b.    intentionally killed Mark Davis Byrd, Sr. (18 U.S.C. § 3591(a)(2))(A));

      c.    intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Mark Davis Byrd, Sr. died as a direct result of such act or acts (18 U.S.C. § 3591(a) (2) (C));

      d.    intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offenses, such that participation in such act or acts constituted a reckless disregard for human life, Mark Davis Byrd, Sr. died as a direct result of such act or acts (18 U.S.C.§ 3591(a)(2)(D));

      e.    committed the offenses after substantial planning and premeditation to cause the death of Mark Davis Byrd, Sr. (18 U.S.C. § 3592 (c)(9)).

40.     The Grand Jury incorporates by reference and re-alleges the allegations contained in Counts Eight and Nine, and makes the following findings as to Counts Eight and Nine, the defendants **MICHAEL RICHARD LAMPHERE, a/k/a "Lamp," JAMIE GRANT LOVEALL, a/k/a "Dutch," DAVID ORLANDO ROBERTS, a/k/a "Chopper":**

      a.    were 18 years of age or older at the time of the offenses;

      b.    intentionally killed Aaron Wade Otto (18 U.S.C. § 3591(a)(2))(A));

    c.    intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Aaron Wade Otto died as a direct result of such act or acts (18 U.S.C. § 3591(a) (2) (C);

    d.    intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offenses, such that participation in such act or acts constituted a reckless disregard for human life, Aaron Wade Otto died as a direct result of such act or acts (18 U.S.C.§ 3591(a)(2)(D));

    e.    committed the offenses after substantial planning and premeditation to cause the death of Aaron Wade Otto (18 U.S.C. § 3592 (c)(9)).

41.    The Grand Jury incorporates by reference and re-alleges the allegations contained in Counts Ten and Eleven, and makes the following findings as to Counts Ten and Eleven, the defendants **JAMIE GRANT LOVEALL, a/k/a "Dutch," WILLIAM DAVID MAYNARD, a/k/a Baby Huey," JAMES ERIK SHARRON, a/k/a "Flounder," and SAMMY KEITH SHIPMAN, a/k/a "Stubby":**

    a.    were 18 years of age or older at the time of the offenses;

    b.    intentionally killed Robert Allen Branch, a/k/a "Lightning" (18 U.S.C. § 3591(a)(2))(A));

    c.    intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Robert Allen Branch, a/k/a "Lightning," died as a direct result of such act or acts (18 U.S.C. § 3591(a) (2) (C));

    d.    intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offenses, such that participation in such act or acts constituted a reckless disregard for human life, Robert Allen Branch, a/k/a "Lightning," died as a direct result of such act or acts (18 U.S.C.§ 3591(a)(2)(D));

    e.    committed the offenses after substantial planning and premeditation to cause the death of Robert Allen Branch, a/k/a "Lightning" (18 U.S.C. § 3592 (c)(9)).

TRUE BILL.

ORIGINAL SIGNATURE ON FILE

FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Jay Hileman
Assistant United States Attorney

LANNY BREUER
ASSISTANT ATTORNEY GENERAL

By: _____
David Karpel
Trial Attorney
Organized Crime and Gang Section